UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| TRANS WORLD LOGITEC, INC., | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-1397-B |
| | § | |
| SAMSUNG SDS GLOBAL SCL AMERICA, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Samsung SDS Global SCL America, Inc.'s (Samsung's) Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Doc. 9), filed on July 16, 2019. For the reasons set forth below, the motion is **DENIED**.

## I.

## FACTUAL BACKGROUND

This case arises out of a dispute between Plaintiff Trans World Logitec, Inc. (TWL) and Samsung. Doc. 5, Pl.'s First Am. Compl., ¶ 1. Specifically, TWL provided logistics services to Samsung for washing machines manufactured by Samsung Electronics America, Inc. (SEHA). *Id.* The logistics services included the movement of SEHA products from Newberry, South Carolina. *Id.* ¶ 13. Samsung allegedly refused to pay for the services as agreed upon. *Id.* ¶ 3.

TWL subsequently filed this suit in Texas state court, and Samsung removed the case to federal court. Doc. 1, Notice of Removal. TWL filed an amended complaint alleging breach of contract, fraudulent inducement, negligent misrepresentation, quantum meruit, and unjust

- 1 -

enrichment. Doc. 5, Pl.'s First Am. Compl., 8–11. After its removal, Samsung filed this motion to transfer the case to the District of South Carolina, Columbia Division. Doc. 9, Mot. to Transfer Venue. TWL then filed its Response (Doc. 13), and Samsung its Reply (Doc. 15). The Court subsequently ordered supplemental briefing on where the alleged misconduct took place (Doc. 20). The parties have submitted their supplemental briefing (Docs. 21 & 22). This motion is now ripe for review.

## II.

## LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to another district or division if (1) the Plaintiff(s) could have brought that action there originally and (2) the transfer would be for "the convenience of parties and witnesses, and in the interests of justice . . . ." 28 U.S.C. §1404(a). The party seeking transfer bears the burden of proving both elements. *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 314 n.10 (5th Cir. 2008) (en banc); *Calloway v. Triad Fin. Corp.*, 2007 WL 4548085, at *2 (N.D. Tex. Dec. 27, 2007).

The parties do not dispute element (1) above. Therefore, the only issue is whether the transfer would be for the convenience of parties and witnesses, and in the interests of justice.

In making this determination, courts engage in a multi-factor test. *Volkswagen II*, 545 F.3d at 315 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)). "The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* (quoting *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004)). The public interest factors include: "(1) the

administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* The balance of these factors must clearly weigh in favor of transferring to the new venue. *Id.* "[If] the transferee forum is no more convenient than the chosen forum, the plaintiff's choice should not be disturbed." *Thomas v. City of Fort Worth*, 2008 WL 4225556, at * 2 (N.D. Tex. Sept. 15, 2008); *see also Volkswagen I*, 545 F.3d at 315.

A court must also independently consider how much weight to assign a plaintiff's choice of forum. *Davis v. City of Fort Worth*, 2014 WL 2915881, at *2 (N.D. Tex. June 25, 2014). "A plaintiff's choice is normally entitled to deference, but when she files suit outside her home forum, the weight accorded to the choice is diminished." *Id.* (quoting *Sivertson v. Clinton*, 2011 WL 4100958, at *4 (N.D. Tex. Sept. 14, 2011) (internal citations omitted)).

## III.

## ANALYSIS

Samsung requests a transfer to the Columbia Division of the District of South Carolina. As set forth above, to obtain such relief Samsung must first show that TWL could have originally filed this suit in the District of South Carolina. The parties do not dispute that the District of South Carolina would have been a proper forum. Thus, the only issue before the Court is whether granting a transfer would serve the interests of convenience and justice. The Court will first analyze the relevant private interest factors, and subsequently address the proper public interest factors.

As discussed in detail below, only one factor, the availability of compulsory process, arguably weighs in favor of transfer. And, that factor is most likely neutral. Therefore the Court denies the motion to transfer venue (Doc. 9).

A. *The Private Interest Factors*

1. <u>Plaintiff's Choice of Forum</u>

"A plaintiff's choice of forum is normally entitled to deference, but when she files suit outside her home forum, the weight accorded to the choice is diminished." *Davis*, 2014 WL 2915881, at *2 (quoting *Sivertson*, 2011 WL 4100958, at *4) (internal citations omitted). Because TWL's state of incorporation and principal place of business are both Georgia, Doc. 13, Pl.'s Br., 2, TWL is not at home in Texas. Therefore, its decision to file the suit in Texas is afforded little-to-no weight.

2. <u>Relative Ease of Access to Sources of Proof</u>

Both parties have conceded that this factor is neutral. *See* Doc. 10, Def.'s Br., 16; Doc. 13, Pl.'s Br., 8.

3. <u>Availability of Compulsory Process to Compel Witnesses</u>

Samsung argues that this factor weighs in favor of transfer because "the Columbia division does not need compulsory process over [Samsung and TWL's current employees] to ensure they testify at trial." Doc. 10, Def.'s Br., 16. However, because these potential witnesses are current employees, the same can be said of the Northern District of Texas. *See CMC Steel Fabricators, Inc. v. Franklin Inv. Corp.*, 2016 WL 3418974, at *12 (N.D. Tex. June 22, 2016) (Boyle, J.) ("[C]urrent employees of a party are considered to be willing witnesses whose testimony can be procured without reliance on the subpoena power, so their locations are not persuasive when considering whether the court can secure their attendance."). As it is Samsung that must demonstrate why the District of

South Carolina, Columbia division is a *more* convenient forum than the Northern District of Texas, see *Volkswagen II*, 545 F.3d at 315, Samsung has not satisfied its burden as to these witnesses.

In addition to current employees of the parties, Samsung lists four former Samsung employees/contractors who would be potential witnesses to this case: Dongjoon Kim, Jong Hyun "Kris" Kim, Sungjae Cho, and Matt Do. Doc. 10, Def.'s Br., 6–8. Additionally, Samsung names one current contractor, Phil Kuk Hur, as a potential witness. *Id.* at 6. Matt Do's current location is Los Angeles, California, *id.* at 8, where he would not be subject to the compulsory process of either the Northern District of Texas or the District of South Carolina. Phil Kuk Hur's current location is Newberry, South Carolina. *Id.* at 6. He would be subject to the compulsory process of the South Carolina court, but not this Court. Therefore, Hur's current location favors transfer.

As to the other three potential witnesses (Dongjoon Kim, Kris Kim, and Sungjae Cho), Samsung lists only their last known locations (Newberry, South Carolina). *Id.* The Court finds that this information is insufficient to demonstrate that these potential witnesses' locations favor transfer. *See Ashton v. Knight Transp., Inc.*, 2009 WL 2407829, at *4 (N.D. Tex. Aug. 6, 2009) (finding that the allegation that some witnesses "presumably reside in Kansas" was "wholly insufficient" because "[d]efendants must offer specific information about witnesses") (citation omitted).

Therefore, because of Mr. Hur's current location, this factor only slightly favors Samsung, if at all.[1]

---

[1] This factor is arguably neutral. When the parties have not alleged that nonparty witnesses would be unwilling to testify, "courts in this district have previously considered this factor neutral." *Cooper-McClintock v. United States*, 2011 WL 5182259, at *3 (N.D. Tex. Oct. 31, 2011) (citing *IBEW-NECA Sw. Health & Benefit Fund v. Duvall Elec., LLC*, 2011 WL 711005, at *4 (N.D. Tex. Feb. 28, 2011) and *Verizon Emp. Comm. v. Glaid*, 2006 WL 3422229, at *4 (N.D. Tex. Nov. 28, 2006)).

Additionally, for the purposes of this analysis, the Court assumes that a current contractor is not an current employee. If the Court were to consider a current contractor a current employee, this would not change the outcome of this order.

### 4. The Cost of Attendance for Willing Witnesses

"[T]he relative convenience to the witnesses is often recognized as the most important factor" in transfer analysis. *Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, 629 F. Supp. 2d 759, 762 (S.D. Tex. 2009). "Moreover, among party and non-party key witnesses, a court should give greater weight to the availability and convenience of non-party, key witnesses." *Id.* at 762.

Here, Samsung lists five non-party witnesses (former employees/contractors and current contractor), each named above. As discussed, the current location of three of these witnesses is unknown; for those whose current locations Samsung lists, one is in Los Angeles, California, and the other, Newberry, South Carolina. Doc. 10, Pl.'s Br., 5–8. For the two non-party witnesses for whom Samsung provides a current location, this factor is neutral. Dallas, Texas, is closer to Los Angeles, California. But, Columbia, South Carolina is closer to Newberry, South Carolina.

As to the party witnesses, Samsung's potential witnesses include four from California; one from Brazil (Wonwoo Cho); and two TWL employees from Covington, Georgia. Doc. 10, Def.'s Br., 5–8. TWL's potential witnesses include Don Han, from its Dallas office, and four Samsung employees from Samsung's Dallas-area headquarters. Doc. 13, Pl.'s Br., 11–12.

The distance between Covington, Georgia, and this Court is 819 miles, while the distance between Covington and the South Carolina, Columbia Division is 178 miles. Doc. 10, Def.'s Br., 16. Samsung believes the shorter distance to South Carolina makes it a more convenient forum for its Georgia witnesses. *Id.*

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct

relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. The 100-mile rule is important because "[w]itnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community." *Volkswagen II*, 545 F.3d at 317. Therefore, for the Georgia witnesses, South Carolina is a more convenient forum.

However, the inquiry does not stop there. Samsung's other party witnesses are located in California and Brazil. *See* Doc. 10, Def.'s Br., 5–8. Samsung has not listed which city in Brazil its witness is located. Regardless of the city, traveling from Brazil to either Columbia, South Carolina, or Dallas, Texas would involve long international travel for which Dallas might be a more convenient location. *See* Doc. 13, Pl.'s Resp., 11 ("In any event, the Northern District is more centrally located and is served by two major airports . . . ."). And for the Californian witnesses, Dallas is closer. Thus, Samsung has not demonstrated how South Carolina is a more convenient forum for these witnesses.

As to TWL's potential party witnesses, five are in the Dallas area. Doc. 13, Pl.'s Br., 11. Samsung argues that because these witnesses lack any knowledge of the TWL services in question,[2] they are irrelevant to the transfer analysis. Doc. 16, Def.'s Reply, 8. However, Samsung's argument here is more appropriate to questioning at trial than at this stage of the proceedings.

Samsung has not demonstrated how transferring venue will reduce the overall cost of the lawsuit for non-party witnesses, or even for party witnesses. Therefore, this factor does not weigh in favor of transfer.

---

[2] As will be discussed below, Samsung believes that these witnesses were not involved in any way in the TWL logistics services.

5. Practical Problems

"Practical problems" is a catch-all factor whereby the Court can consider any other considerations not covered by the other private factors. *See E.E.O.C. v. Fort Worth Ctr. of Rehab.*, 2013 WL 5707848, at *3 (N.D. Tex. Oct. 18, 2013) (Boyle, J.) ("The parties have not raised any other practical problems besides those already discussed; thus, the Court does not weigh this factor.").

Samsung argues that there is a practical problem in litigating the case in the Northern District of Texas because TWL's lawsuit alleges a breach of contract that could have only occurred in South Carolina. Doc. 10, Def.'s Br., 15. However, TWL alleges that management decisions relevant to the litigation, such as fraudulent inducements, were made from Samsung's Dallas office. Doc. 13, Pl.'s Resp. 3. TWL identified four Samsung employees in Samsung's Dallas office (Nak Keun Cho, Man Suk Kim, Jimmy Cho, and Dong Hyun Kim) who it believes are familiar with the litigation and the relationship between TWL and Samsung. *Id.* at 12. In its Reply, Samsung argues that TWL mistakenly believes that Samsung's headquarters at the time of the alleged misconduct were in Dallas, when they were in fact in San Diego, California. Doc. 16, Def.'s Reply, 3. Therefore, Samsung believes that the four Samsung employees have, "at best, after-the-fact tangential knowledge of the issues in the current lawsuit." *Id.* at 4.

To better resolve this factor, this Court ordered supplemental briefing. Doc. 20, Order for Supplemental Briefing. After reviewing the supplemental briefing, the Court concludes that Samsung has not met its burden in showing that its Dallas-area office had no connection to the TWL logistics services in dispute. Therefore, this factor does not weigh for or against transfer.

In its supplemental briefing, Samsung does provide evidence showing that Samsung's regional headquarters, at the time relevant to the dispute, were in San Diego, and not Dallas. *See* Doc. 21, Def.'s Supp. Br., 2. Specifically, Samsung provides evidence that Sue King, its Head of Human Resources, announced on June 1, 2019–after the alleged misconduct took place–that the headquarters were relocating to Dallas. *Id.* (citing Doc. 10, Def.'s Br., Ex. 2). Samsung further submitted affidavits from the four Samsung employees TWL names above who allege that neither they nor the Dallas office had any connection or knowledge of the services at issue in the lawsuit. Doc. 21, Def.'s Supp. Br., 4–6.

In TWL's supplemental briefing, TWL provides evidence that some of the decisions relevant to the case may have been made in Samsung's Dallas office, regardless of whether it was Samsung's headquarters at the time of the alleged misconduct. For example, TWL points to e-mail exchanges between TWL and Wonwoo Cho, Samsung's Managing Director in its Dallas-area office at the time, discussing some of the contractual rates at issue in this litigation.[3] Doc. 22, Pl.'s Supp. Br., 6 (citing *Id.*, App., 64–82). Specifically, Wonwoo Cho allegedly attempted to convince TWL to accept lower rates for its services. Doc. 22, Pl.'s Supp. Br., App., 67. TWL also points to a text exchange between its President, Seon Kim, and Samsung's Regional Manager in Newberry, South Carolina. Doc. 22, Pl.'s Supp. Br., 7. In that text-message exchange, while the parties were discussing the disputed services, Samsung's representative told Kim that he would send an email to, among other people, Wonwoo Cho. *Id.* (citing Doc. 22, App., 91).

Such evidence makes it clear that TWL does not rely solely on the belief that Samsung's regional headquarters during the alleged misconduct were in Dallas. Instead, TWL relies on

---

[3] Wonwoo Cho's current location is Brazil, as noted above. Doc. 10, Def.'s Br., 6.

communications, which suggest that Samsung's approval process of TWL's services might have included decisions that took place in Samsung's Dallas-area office. *See, e.g.*, Doc. 22, Pl.'s Supp. Br, 22. "Where, as here, the action involves breach of contract, federal courts should consider, 'where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *Frederick v. Advanced Fin. Sol., Inc.*, 558 F. Supp. 2d 699, 705 (E.D. Tex. 2007) (quoting *James J. Flanagan Shipping Corp. v. Mediterranean Shipping Co., S.A.*, 2007 WL 2461817, at *2 (E.D. Tex. 2007)). At this stage of the litigation, the Court does not determine the credibility of the evidence presented. All the Court concludes is that, at this time, Samsung has not carried its burden in showing that its Dallas office did not have any connection to the "operative facts and circumstances" of the case. Doc. 16, Def.'s Reply, 2. It asserts that requests for services, performance of services, and payment approval requests by Samsung came from its Newberry, South Carolina, office. Doc. 21, Def.'s Br., 6. Yet, TWL's evidence calls into question from where the *approval* of such requests might have come.

Therefore, at this point in the litigation, this factor is neutral.[4]

B.  *The Public Interest Factors*

   1.  <u>The Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law</u>

Both parties concede that this factor is neutral. *See* Doc. 16, Def.'s Reply, 10; Doc. 13, Pl.'s Br., 18.

---

[4] TWL asserts that there is a practical problem in transferring the case to South Carolina, where Samsung has an office and TWL does not. Doc. 13, Pl.'s Br., 19. It alleges that such a move would partially convenience Samsung and be a "distinct inconvenience and disadvantage to TWL." *Id.* The Northern District, where both parties have offices, would be a better forum, according to TWL. *Id.* However, the Court does not consider this argument here, as it finds that such arguments and considerations are imbedded in its analysis of other factors, such as the cost of obtaining witnesses.

2. <u>The Local Interest in Having Localized Interests Decided at Home</u>

This factor "favors the venue where the acts giving rise to the lawsuit occurred." *Metromedia Steakhouses Co. v. BMJ Foods P.R., Inc.*, 2008 WL 794533, at *3 (N.D. Tex. Mar. 26, 2008) (citation omitted). Here, the parties disagree as to where such acts occurred. *See* Doc. 10, Def.'s Br., 19; Doc. 13, Pl.'s Br., 16.

As discussed above, TWL has presented sufficient evidence suggesting that Samsung's Dallas-area office played a role in the alleged misconduct. "Thus, even if other acts giving rise to this suit occurred in [South Carolina], this factor would be no more than neutral and would not weigh in favor of transfer." *Snelling Emp't, L.L.C. v. Doc Johnson Enter.*, 2018 WL 3659067, at *5 (N.D. Tex. Mar. 26, 2008) (Boyle, J.).

3. <u>The Possibility of Delay Due to Court Congestion</u>

Here, the parties cite to different statistics—Samsung to the greater number of cases filed in the Northern District of Texas, and TWL to the quicker, on average, disposition of cases in the Northern District. Doc. 10, Def.'s Br., 17; Doc. 13, Pl.'s Br., at 15.

In the past, this Court has not given this factor much weight, due to its speculative nature. *See Magana v. Toyota Motor Corp.*, 2010 WL 5108850, at *3 (N.D. Tex. Dec. 6, 2010) (Boyle, J.). Yet, "courts often look to the Federal Judicial Caseload Statistics." *Id.* These statistics suggest that there is no discernible difference in court congestion between the two districts. The median case reaches disposition in 6.7 months in the Northern District of Texas, while it takes the median case 8.7 months in the District of South Carolina. *See* Table C-5, U.S. District Courts-Median Time Intervals from Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending December 31, 2018,

https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2018/03/31 (last visited October 4, 2019). On the other hand, the median case that goes to trial reaches disposition in 18.0 months in the District of South Carolina, and 22.1 months in the Northern District of Texas. *See id.*

Additionally, Samsung's reliance on the total number of cases in each district does not tell the entire story. It does not consider the total number of judges in each district, for example. Therefore, this factor does not favor transfer.

### 4. Familiarity with the Law that Governs the Action

Samsung contends that Texas's choice-of-law rules dictate that South Carolina's law will govern the case and, therefore, "[t]he District of South Carolina is probably better positioned to apply South Carolina law." Doc. 10, Def.'s Br., 18. TWL points out that Samsung has not shown a conflict between Texas and South Carolina law. Doc. 13, Pl.'s Br., 17. And without a conflict, "Texas courts presume that other states' laws are the same as its own." *Id.* (quoting *Playboy Enters. v. Sanchez-Campuzano*, 519 F. App'x 219, 225 (5th Cir. 2013) (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419 (Tex. 1984))).

The Court finds that this factor does not weigh in favor of transfer for two reasons. First, Samsung has not identified a conflict between Texas and South Carolina law on the claims in this case, and it has the burden of doing so. Second, all the claims here—breach of contract, fraudulent concealment, negligent misrepresentation, and quantum meruit—are basic in nature. *See Blanchat v. Fuir*, 2009 WL 10705170, at *4 (N.D. Tex. May 4, 2009) ("Similarly, [the plaintiff's] only true cause of action is a basic fraud claim . . . . Thus, there is no need to transfer this case to ensure familiarity with governing law.") (internal citation omitted). Therefore, this factor is neutral.

## IV.
## CONCLUSION

In sum, although TWL's choice of forum itself is not afforded much weight, the Court finds that only one factor, the availability of compulsory process, is arguably in Samsung's favor. And even the outcome of that factor is most likely neutral. In the light of its analysis, the Court determines that Samsung has not met its burden on this motion. The motion to transfer venue (Doc. 9) is hereby DENIED.

**SO ORDERED.**

**SIGNED: October 15, 2019.**

_____
**JANE J. BOYLE
UNITED STATES DISTRICT JUDGE**